IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LENNIL L. JOHNSON, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-cv-835-SMY |
| | ) |
| MENASHA PACKAGING COMPANY, | ) |
| LLC and MENASHA CORPORATION, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Lennil L. Johnson filed the instant employment discrimination lawsuit against Defendants Menasha Packaging Company LLC and its parent corporation, Menasha Corporation, alleging racial discrimination, harassment, retaliation, and battery. Now before the Court is Defendants' Motion for Summary Judgment (Doc. 25), which Plaintiff opposes (Doc. 37). For the following reasons, Defendants' Motion is **GRANTED**.

## Factual Background

Construed in the light most favorable to the Plaintiff, the evidence and reasonable inferences establish the following facts relevant to the pending summary judgment motion: Menasha Packaging Company, LLC ("Menasha Packaging") operates a packaging facility located at 21 Gateway Commerce Center Drive, Edwardsville, Illinois 62025 ("the facility") (Doc. 27-1, ¶ 4; Doc. 27-2, ¶ 2). Menasha Packaging is a subsidiary of Menasha Corporation (Doc. 27-1, ¶¶ 2, 6). Menasha Corporation did not have any employees at the facility during the relevant period. *Id.* Menasha Packaging has a production floor at the facility where workers produce and prepare

packaging products (Doc. 27-1, ¶ 4).  Workers are stationed throughout the production lines, placing products in boxes on the line and taking boxes off the line.  *Id.*

Menasha Packaging contracted with several staffing agencies who assigned their employees to perform work at the facility (Doc. 27-1, ¶¶ 5, 7).  Those staffing agencies included Team Company d/b/a Staff Quick ("Staff Quick") and Staffing Synergies.  *Id*.  Staff Quick and Menasha Packaging entered into a Staffing Agreement under which Staff Quick assigned its employees to perform work at the facility.  *Id*.  The Staffing Agreement provided in relevant part:

- All personnel assigned to Menasha Packaging pursuant to this Agreement shall be considered employees of Staff Quick and not eligible for any benefit offered by Menasha Packaging to its employees.  Except as provided herein, Staff Quick shall assume the sole and exclusive responsivity for (i) the payment of wages to its personnel for services performed by such personnel, and (ii) for all worker's compensation claims, liabilities and obligations.  Staff Quick shall, with respect to its personnel, be solely responsible for withholding federal, state, and local income taxes, paying Social Security taxes, unemployment insurance and maintaining workers' compensation insurance coverage in an amount and under such terms as required by state law (Doc. 27-4, at pp. 4-5);

- Staff Quick shall comply with all applicable laws, including, but not limited to, employment laws related to immigration, health, and safety.  Staff Quick shall maintain all employment-related records.  *Id.* at p. 5;

- Staff Quick is responsible for providing all required PPE inclusive of gloves, safety sleeves, safety glasses and needed safety vests.  *Id.* at p. 6;

- All personnel provided by Staff Quick are the employees of Staff Quick and Menasha Packaging is prohibited from directly or indirectly soliciting or hiring any Staff Quick employees until the employee had provided Menasha Packaging 480 hours of service through Staff Quick.  *Id.;*

- Menasha Packaging is responsible for all on the job training.  *Id.*;

- Menasha Packaging is required to immediately notify Staff Quick of any problems regarding any of Staff Quick's employees, including but not limited to injuries and misconduct.  *Id*;
- Menasha Packaging has the discretion to require Staff Quick personnel to leave the facility if Menasha Packaging determines them incompetent, negligent, or

disruptive.  Menasha Packaging is required to notify Staff Quick immediately.  *Id.* at p. 8.

Johnson applied to Staff Quick in July 2016 and September 2017 (Doc. 27-4).  Staff Quick notified Johnson in September 2017 that he would be assigned to work at the facility (Doc. 27-3, p. 43), assigned him a shift at the facility, and set his rate of pay (Doc. 27-1, ¶ 15).  On his first day at the facility, Johnson met Saul Ruiz (Doc. 27-3, p. 62).  Ruiz is the Production Supervisor at Menasha Packaging and was responsible for supervising Menasha Packaging employees, generally overseeing operations, and working with staffing agencies who assigned their employees to the facility. (Doc. 27-2, ¶ 2).  Johnson testified that Ruiz gave him a pair of gloves, eye protection and general orientation (Doc. 27-3, p. 62).  Staff Quick had staff on site to train and supervise their employees (Doc. 27-2, ¶ 8).  Johnson received his entry badge from Jose Rivas, a Staff Quick managerial employee (Doc. 27-3, p. 52, Doc. 27-2, ¶ 28).

Johnson's assignment at the facility was on the production line and involved repackaging or assembling boxes, janitorial/maintenance upkeep of the area, and occasionally cleaning a bathroom (Doc. 27-3, p. 70).  Johnson testified that the work was fairly easy; you did not need special skills or talent.  *Id*. at p. 75.

There were "line leads" who worked on the production line and were also employed by staffing agencies (Doc. 27-2, at ¶ 7).  There were no Menasha Packaging supervisors assigned to regularly control the work on the lines where Johnson worked.  *Id*. at ¶ 8. Staff Quick was responsible for disciplining and discharging its employees.  *Id*. at ¶ 9.  Ruiz and other Menasha Packaging managers could report issues to Staff Quick but could not control whether Staff Quick decided to do with its employees.  *Id*.  If there was an issue with a Staff Quick employee, Ruiz would typically tell Staff Quick about it and Staff Quick would decide how to handle the issue.  *Id*. at ¶ 8.

Johnson testified that once he began working at the facility, Ruiz denied him restroom breaks when he requested them while Hispanic employees were granted breaks (Doc. 27-3, pp. 88, 189). He also testified that Ruiz, Hugo Loera, and Ismael Leyva used racial epithets on one to three occasions or more. *Id*. at pp. 86, 183, 187-188. Loera (a managerial employee) and Leyva (an HR representative) were employed by Staffing Synergies, Inc., another staffing agency that assigned employees to the facility (Doc. 27-2, ¶ 10).

Ruiz heard complaints that Johnson had been disrespectful toward and intimidated others working at Menasha Packaging by telling them he had just gotten out of prison, "cussing", and making a "barking" sound (Doc. 27-2, at ¶ 12). On September 28, 2017, Ruiz told Staff Quick about the complaints. *Id*. at ¶ 13.

On October 3, 2017, Johnson was working with Ashley Gardner, a line lead who was employed by another staffing agency. *Id*. at ¶ 14. Ruiz was called to the line because he heard there was an issue. *Id*. Gardner reported to Ruiz that Johnson was not keeping up with his tasks. *Id*. Ruiz told Johnson that he was not doing his job correctly (Doc. 27-3, p. 89). According to Johnson, he "got in a verbal" with Ruiz. *Id*. Ruiz asked Johnson to leave the facility (Doc. 27-2, ¶ 22). Johnson threw his safety goggles down and walked off (Doc. 27-3, at p. 98). Johnson testified that as he was leaving the building, Ruiz, Loera, and Leyva struck, choked, pushed, and dragged him a few feet while a Black security guard watched. *Id*. at pp. 102-103. Johnson also testified that he was tossed to the door going out the building. *Id*. at p. 112. Surveillance videos depict Johnson being escorted from the facility, but do not show him being shoved or otherwise touched inappropriately (Doc. 27-2, ¶¶ 17-27; Doc. 27-2, Ex. B-1 to B-3). After Johnson left the facility, Ruiz sent an email advising Staff Quick about the incident (Doc. 27-2, ¶ 28, B-4). Staff Quick ended Johnson's assignment following the incident (Doc. 27-4, p. 52).

Johnson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Staff Quick and Menasha Packaging (Doc. 27-5, pp. 102-105). Johnson settled his claims with Staff Quick through the Commission's Mediation/ADR Program (Doc. 27-5, pp. 199-203; *Id*. at p. 104).

### Discussion

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party is entitled to summary judgment where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004). However, the "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (internal quotations and citations omitted).

Defendants contend Johnson has not produced evidence from which a reasonable jury could conclude that Menasha Packaging or Menasha Corporation employed him, and therefore, Defendants cannot be found liable for discrimination under Title VII and 42 U.S.C. § 1981. Defendants further contend that Johnson's discrimination and battery claims fail as a matter of law.

**Title VII (Count I) and 42 U.S.C. § 1981 (Count II)**

The threshold element for any Title VII claim is "the existence of an employer-employee relationship." *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015). Although Title VII claims are typically asserted against an employee's "direct" employer, a plaintiff "may have multiple employers for purposes of Title VII liability," and may, "under certain limited circumstances, bring a claim against a defendant who is not his direct employer." *Id.* (citing *Tamayo*, 526 F.3d at 1088; *EEOC v. Illinois*, 69 F.3d 167, 169 (7th Cir. 1995)). Likewise, an entity other than an individual's direct employer may be liable under § 1981 if that entity is a "joint employer." *See McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 790 (7th Cir. 2019) (using a Title VII test to examine employment in a § 1981 matter). Courts look to five factors to determine whether a defendant is a "*de facto* or indirect employer." *Id.* at 701–02; *see Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378–79 (7th Cir. 1991): (1) the extent of the employer's control and supervision over the employee; (2) the kind of occupation and nature of skill required, including whether skills were acquired on the job; (3) the employer's responsibility for the costs of operation; (4) the method and form of payment and benefits; and (5) the length of the job commitment. *Love*, 779 F.3d at 702 (citing *Knight*, 950 F.2d at 378–79).

In examining the *Knight* factors in this case, the Court must consider how much control Defendants exerted over Johnson and what the economic realities of their relationship were. *Id.* "The employer's right to control is the 'most important' consideration in ascertaining the existence of an employer-employee relationship." *Id.* at 703 (quoting *Knight*, 950 F.2d at 378). "Thus, if an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist." *Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487, 493 (7th Cir.

1996), *as amended on denial of reh'g and reh'g en banc* (Feb. 7, 1997). "When control is examined, 'the key powers are, naturally, those of hiring and firing.'" *Love*, 779 F.3d at 703 (quoting *EEOC*, 69 F.3d at 171).

Johnson points out that Ruiz and other Menasha employees provided orientation and on the job training. However, safety training alone is insufficient to establish an employment relationship. *See Love*, 779 F.3d at 704. Defendants clearly did not have significant "control" over Johnson. Menasha Packaging did not hire him, set his hours or his pay, assign him a work location, discipline or discharge him, or pay him. Rather, pursuant to its contract with Defendants, Staff Quick was solely responsible for hiring, supervising, and discharging its employees. Johnson applied to and was hired by Staff Quick. Staff Quick placed him at the facility to work on the production line and was responsible for procuring liability insurance and workers' compensation insurance and for paying taxes for its employees. As such, the economic realities of Johnson's employment unequivocally cast him as an employee of Staff Quick, not Defendants.

It is true that Menasha Packaging retained certain discretionary power under its contract with Staff Quick to require Staff Quick employees, like Johnson, to leave the premises if it determined them disruptive. This discretion, however, did not amount to control of Johnson's employment; Menasha Packaging was required to notify Staff Quick if such action was taken. Thus, when Ruiz received complaints about Johnson, he did not and could not discipline or discharge him – he reported the complaints to Staff Quick. And following Johnson's removal from the premises on October 3, 2017, Ruiz reported to Staff Quick that Johnson had been asked to leave. He did not discharge Johnson nor recommend that Staff Quick do so.

The remaining *Knight* factors also support a finding that Defendants were not Johnson's employer. With respect to the kind of occupation and nature of skill required, Johnson testified

that the work was "basically fairly easy, and you don't have to have special skills or talent." Johnson did not acquire any new skills from working on the production line at the facility. Nor did Menasha Packaging provide him with specialized training or skills for him to do his job. *See e.g., Hojnacki v. KleinAcosta,* 285 F.3d 544, 550 (7th Cir. 2002) (fact that plaintiff did not derive his job skills from his employment with defendant suggested no employment relationship).

The third *Knight* factor requires consideration of whether the putative employer was responsible for the costs of operation, including the costs of "equipment, supplies, fees, licenses, workplace, and maintenance of operations." *Id.* at 378. According to Johnson, Ruiz provided him with goggles, gloves, and a card to swipe into the workplace. But his testimony does not establish who paid for those materials. Menasha Packaging's contract with Staff Quick required that Staff Quick, not Menasha Packaging, furnish all required PPE, including gloves, safety sleeves, safety glasses and needed safety vests. Even attributing all reasonable inferences in Johnson's favor, his testimony on this point alone is insufficient to establish an employer-employee relationship. *See Hojnacki v. Klein–Acosta,* 285 F.3d 544, 550 (7th Cir. 2002) (finding the fact that the putative employer provided office space and equipment to the alleged employee insufficient by itself to establish an employment relationship); *Love*, 779 F.3d at 704, n. 3 (to hold putative employer's actions of providing materials had the effect of creating an employer-employee relationship with Plaintiff would seem to over-exaggerate the significance of those actions).

The fourth factor – how Johnson received his pay and benefits – also bolsters Defendants' position. Staff Quick was solely responsible for paying Johnson's wages and benefits. He received his paychecks from Staff Quick, had taxes withheld by Staff Quick, and filled out tax documentation listing Staff Quick as his employer.

Finally, with respect to the fifth *Knight* factor, the terms and nature of Jonson's assignment to Menasha Packaging demonstrate that he was not a Menasha employee. Johnson was a temporary employee and had no expectation of any significant duration of employment.

Viewing the totaling of the circumstances, and having examined and weighed the relevant factors, the Court finds that Defendants were not Johnson's "employer" under Title VII or § 1981. Accordingly, Defendants are entitled to summary judgment on Counts I and II of Plaintiff's Complaint.

### Battery (Count III)

Johnson claims that as he was subjected to battery by Ruiz, Loera, and Leyva and was tossed to the door going out the building. However, surveillance videos depict Johnson being escorted from the facility and do not show him being shoved, punched, or otherwise touched inappropriately. When opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe it, the Court will not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("Respondent's version of events is so utterly discredited by the record…[t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape"); *Gillis v. Pollard*, 554 F. App'x 502, 506 (7th Cir. 2014) (no triable dispute about excessive force to groin based on video evidence); *cf. Bogie v. Rosenberg,* 705 F.3d 603, 610–12 (7th Cir. 2013) (dismissal of complaint was appropriate where video exhibit attached to complaint contradicted the allegations in the complaint). Accordingly, Defendants are also entitled to summary judgment on Count III[1].

---

[1] Defendants also assert that Johnson cannot establish a battery claim because the claim is barred by the Illinois Workers Compensation Statute, 820 ILCS 305/5(a) and he cannot establish that either Defendant is vicariously liable for the actions of Staffing Synergy employees Leyva and Loera. As to Ruiz, Defendants assert that Johnson was unable to explain any specific touching that Ruiz committed, and security videos do not depict Ruiz touching Johnson.

**Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 25) is **GRANTED**. All pending motions are **TERMINATED** as **MOOT** and the Clerk of Court is **DIRECTED** to enter judgment accordingly and to close this case.

IT IS SO ORDERED.

DATED: May 3, 2021

**STACI M. YANDLE**
**United States District Judge**

---

Because the undisputed video evidence demonstrates that no battery occurred, the Court need not consider Defendants' alternate bases for summary judgment.